## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

FILED

JAN 1 6 2009

Phil Lombardi, Clerk
U.S. DISTRICT COURT

1. **LARRY E. RHYNERSON,**

        **Plaintiff,**

v.

1. **MIKE DUNLAP, individually and in his capacity as County Commissioner of Washington County, Oklahoma;**
2. **GARY DECKARD, individually and in his capacity as County Commissioner of Washington County, Oklahoma;**
3. **LINDA HERNDON, individually and in her capacity as County Commissioner of Washington County, Oklahoma; and**
4. **THE BOARD OF COUNTY COMMISSIONERS OF THE COUNTY OF WASHINGTON, OKLAHOMA,**

        **Defendants.**

)
)
)
)
) **CASE NO:**  *TLW*
)
) **09 CV - 02 4 GKF**
)
) **JURY TRIAL DEMANDED**
)
) **ATTORNEY'S LIEN CLAIMED**
)
)
)
)
)
)
)
)
)
)

## COMPLAINT

COMES NOW the Plaintiff, Larry E. Rhynerson ("Rhynerson"), and for his claims against the above named Defendants alleges and states as follows:

### I. NATURE OF ACTION

The Plaintiff, Rhynerson, brings this Complaint against the Defendants seeking the protection of and redress from deprivation of his constitutional rights protected under the First Amendment to the Constitution of the United States pursuant to 42 U.S.C. Section 1983. The Plaintiff, Rhynerson, also seeks damages and makes claims against the Defendants under applicable Oklahoma law. This case is not related to any previously filed case in this Court.



## II.  JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this cause pursuant to 28 U.S.C. Section 1331 and 24 U.S.C. Section 1343 (4). This Court has Supplemental Jurisdiction over Plaintiff's claims arising under Oklahoma law pursuant to 28 U.S.C. Section 1367.

2. Venue is proper in this Court and in this Judicial District pursuant to 28 U.S.C. Section 1391(b).

## III.  PARTIES

3. The Plaintiff, Rhynerson, is a citizen of the United States and a resident of Washington County, Oklahoma and of this Judicial District.

4. The Defendants, Mike Dunlap ("Dunlap"), Gary Deckard ("Deckard"), and Linda Herndon ("Herndon"), are all residents of Washington County, Oklahoma and were the duly elected County Commissioners of Washington County, Oklahoma at all times material hereto. The Board of County Commissioners of Washington County ("the Board") was at all times material hereto the *de jure* or *de facto* final policy maker with respect to personnel decisions for at will Director level employees of Washington County including the Plaintiff.

5. The claims alleged herein occurred in Washington County, Oklahoma at a time when the Plaintiff was a resident of said County.

6. Washington County is a political subdivision of the State of Oklahoma pursuant to Title 51, Oklahoma Statutes, Section 152(8)(c) and employed the Plaintiff as Information Technology  Director ("IT Director") for Washington County at all times material hereto. Pursuant to Title 19, Oklahoma Statutes, Section 4, suits are to be brought against a County under Oklahoma law by naming the Board of County Commissioners of the appropriate County.

2

7. The individual Defendants acted under color of state law at all times material hereto and within the scope of their duties as County Commissioners except as otherwise hereafter specifically alleged. The Defendants' conduct complained of herein was intentional and violated clearly established constitutional rights of which a reasonable person in their position would have known.

## IV.  FACTUAL BACKGROUND

8. The Plaintiff, Rhynerson, commenced his employment as an employee of Washington County, Oklahoma on or about April 1, 1989. While employed by Washington County, Rhynerson served as a long term valuable employee with a commendable work record and was not subject to any disciplinary action prior to the accrual of his claims asserted herein. At all times material to the claims asserted herein, Rhynerson held the job title of IT Director for Washington County and served as an at will employee of Washington County.

9.  Commencing in or about the Summer of 2007, Rhynerson began speaking to Washington County officials as a citizen regarding matters of public concern with respect to the operations of the Washington County government and, specifically, involving improprieties regarding the operations of the Board and the Washington County Treasurer's office. Rhynerson's complaints included what he in good faith and reasonably believed to be certain improper and/or unlawful conduct with respect to County government operations, including, *inter alia,* waste and abuse of taxpayer monies, involving County Treasurer, Stan Steven ("Stevens"), and the Board's then Secretary, Kodi Ferguson ("Ferguson"). Rhynerson's complaints related to matters of public concern which involved, *inter alia,* evidence of impropriety, corruption and/or malfeasance by a public official and an employee who was paid

3

with County funds, and conduct which adversely impacted the operation of Washington County government.

10.  At a meeting held on or about August 10, 2007 during which Defendant Herndon and other County officials were present, Rhynerson made specific complaints as a citizen regarding the operation of County government and what he reasonably believed to be the improper and/or unlawful conduct of Stevens and Ferguson, including waste and abuse of taxpayer monies, and was advised by Defendant Herndon that she "would look into it." Upon information and belief, Defendant Herndon then spoke to Ferguson and/or Stevens regarding Rhynerson's complaints and Stevens thereafter advised another Washington County official that Rhynerson "... better be very careful about what he is doing."

11.  On or about August 31, 2007, Rhynerson and a co-worker were posting the agenda for the next regular meeting of the Board scheduled for September 4, 2007 and Rhynerson noticed that he, along with others, were listed on the agenda for executive session employment discussion and for possible adverse employment action. Rhynerson had not been previously advised that he would be on the Board's agenda or that his employment was deficient. In fact, Rhynerson had an exemplary employment record with the County. Upon further inquiry on that date, Rhynerson was advised that his name had been placed on the agenda by Defendant Dunlap. Rhynerson also made inquiry of Defendant Herndon on that date and was advised by her that the matter was nothing to worry about.

12. On September 4, 2007, Rhynerson was called into a meeting of the Board with Defendants Dunlap, Deckard and Herndon during which Rhynerson again further expressed his concerns to them as a citizen  related to the operation of Washington County government

4

involving the Board's secretary Ferguson and Washington County Treasurer Stevens. At the conclusion of that meeting, no action was taken with respect to Rhynerson's employment status.

13. On or about September 7, 2007, Rhynerson noticed while posting the agenda for the next regular meeting of the Board scheduled for September 10, 2007 that he was again listed on the agenda for executive session employment discussion and for possible adverse employment action.

14. On September 10, 2007, Rhynerson was called into a meeting of the Board with Defendants Deckard and Herndon during which he was advised by Defendant Deckard, *inter alia,* that "after more thought" he felt that Rhynerson was "imposing his will" on County officials with respect to certain matters and Rhynerson was also advised by Defendant Deckard that he (Rhynerson) could no longer attend certain County meetings which he had attended for years and could no longer serve on certain committee. During that meeting, Rhynerson advised Defendant Deckard that he believed his appearance on the previous agenda of the Board for potential adverse employment action and the action being taken against him was in retaliation for his prior complaints involving Stevens and Ferguson. Rhynerson also advised Defendant Deckard at that time that he wished to lodge a formal complaint/grievance regarding the matter and the improper conduct of Stevens and Ferguson which he had previously complained about. During this meeting, Defendant Deckard threatened Rhynerson that action "would be taken" against him if he spoke to anyone about what had been discussed in the meeting. During this meeting, Rhynerson had indicated to Defendant Deckard that since his complaints involving Stevens and Ferguson were not getting appropriate attention, that perhaps he would return the following week to the Board's meeting to discuss those concerns during the "public comment" portion of

5

the meeting so that the situation would be made known to the public. Defendant Deckard

indicated that the County had already had enough embarrassment and did not need this matter

getting out there, discouraged Rhynerson from voicing his concerns during "public comment",

and stated that it would be best for Rhynerson to come back the following week to further discuss

the situation with the Board when Defendant Dunlap was also present during executive session.

15. Rhynerson's name was again listed on the Board's agenda for its September 17, 2007

meeting for executive session employment discussion and for possible adverse employment

action. On September 17, 2007, Rhynerson received a call from Defendant Dunlap who advised

Rhynerson to come to the meeting of the Board on that date prior to the executive session portion

of the meeting because County Treasurer Stevens wished for all elected officials and department

heads to be present. During that meeting of the Board, Stevens admitted through tears to certain

improper conduct and abuse of his position as Washington County Treasurer.

16. Although Rhynerson's name was again listed on the Board's agenda for executive

session employment discussion and possible adverse employment action on September 17, 2007,

Rhynerson was not called into an executive session and was not given the opportunity to further

discuss his complaints involving Stevens and Ferguson with the Board or with Defendant Dunlap

as had previously been represented to him by Defendant Deckard on September 10, 2007.

17. Although the Board's agenda for its next regular meeting on September 24, 2007

listed possible executive session employment related matters to be conducted, no specific names

were listed on the agenda for executive session discussion or action and therefore no executive

session action was conducted at that meeting of the Board.

18. Rhynerson's name was again listed on the Board's agenda for executive session

6

employment discussion and possible adverse employment action on October 1, 2007. Although Rhynerson waited to be called to that executive session, he was never called in, was not contacted, and was not advised of any action being taken against him.

19. The Board's agenda for its next regular meeting on October 8, 2007 did not include any executive session or employment related actions.

20. On October 12, 2007, Rhynerson was advised that he was again listed on the Board's agenda for its next regular meeting on October 15, 2007 for executive session employment discussion and possible adverse employment action. Although Rhynerson again waited to be called to that executive session, he was never called in, was not contacted, and was not advised of any action being taken against him.

21. There were no executive session or other agenda items related to Rhynerson on the Board's regular meeting agendas for the meetings held on October 22, 2007, October 29, 2007, November 5, 2007, or November 13, 2007. Commencing on October 22, 2007, the "public comment" portion of the Board's agenda which had previously allowed public comment on Board action began to be omitted from the Board's agenda and "public comment" portion continued to be omitted as of the date of Rhynerson's discharge complained of below.

22. On or about November 15, 2007, Rhynerson learned that he had not received a cost of living pay adjustment (raise) which was received by other County employees and which Rhynerson was entitled to receive. Rhynerson had not been previously advised by the Board that he would be singled out as not receiving such a pay adjustment and no explanation was given to Rhynerson by the Board for him not receiving the cost of living raise to which he was entitled.

23. On November 20, 2007, Rhynerson was met in his County office by Defendant

7

Deckard who was accompanied by an armed security officer. At that time, Rhynerson was advised by Defendant Deckard that his employment was being terminated and that he was to clean out his desk. Rhynerson was also asked by Defendant Deckard to turn in his keys and cellular phone, and Rhynerson complied with that request. Rhynerson was advised at that time by Deckard that his employment had been terminated, despite the absence of any prior formal action of the Board approving such adverse employment action, and no reason was given by Defendant Deckard for Plaintiff's termination.

24. On November 26, 2007, Rhynerson's name appeared on the Board's agenda for executive session employment discussion and possible adverse employment action. Rhynerson was not called into any such session but was advised at that Board meeting that "immediate action was taken" with respect to his employment. Although Rhynerson requested an explanation for his termination, no explanation or reason was given to him by the Board.

25. Subsequent to Rhynerson's termination, Stevens, Ferguson and another County employee were charged with multiple drug related felonies in the District Court of the Eleventh Judicial District of the State of Oklahoma Sitting in and for Washington County, Case. No's CF-2008-31, CF-2008-32, and CF-2008-33. The multiple count felony criminal charges against Stevens and Ferguson specifically allege, *inter alia,* that they each conspired to Distribute Controlled Substances at the Washington County Annex; the same building at which both the Board and Rhynerson's offices were located when Rhynerson made his complaints regarding Steven and Ferguson as set forth above. Upon information and belief, the police investigation in those criminal cases alleges that Stevens and Ferguson were having an affair and using county offices in their drug activity. Both Stevens and Ferguson resigned their positions with

8

Washington County after the criminal charges were filed against them. The criminal cases involving Stevens and Ferguson remain pending at this time.

## V.   CLAIMS FOR RELIEF

### *COUNT I*
### *CLAIM UNDER 42 U.S.C. SECTION 1983 FOR 1ST AMENDMENT RETALIATION*

26. The Plaintiff, Rhynerson, adopts and incorporates by reference the allegations set forth in paragraphs 1-25 of this Complaint as if fully set forth herein.

27. A substantial and/or motivating factor in the denial of job related benefits to Rhynerson and in the termination of Rhynerson's employment was the Plaintiff's exercise of his right to speak out on matters of public concern; including Rhynerson's right to speak about improprieties and malfeasance with respect to the operation of Washington County government, improprieties and malfeasance with respect to the operations of the Board and the Washington County Treasurer's office, apparent improper and/or unlawful conduct involving County government, and apparent waste and/or abuse of taxpayer monies.

28. The denial of job related benefits to Rhynerson and the termination of Rhynerson's employment was in retaliation for and was in violation of Rhynerson's right of free speech protected under the 1st Amendment to the United States Constitution and is actionable under 42 U.S.C. Section 1983.

29. As a direct result of the Defendants' unlawful conduct, the Plaintiff has and will suffer damages; has been and will be deprived of income in the form of lost wages, lost job benefits and lost retirement benefits; and the Plaintiff has and will suffer from mental pain, anguish, emotional distress, and loss of enjoyment of life.

30. The conduct of Defendants Dunlap, Deckard and Herndon complained of herein was reckless or in callous disregard of, or indifference to, the rights of Rhynerson, thereby justifying an award of punitive and exemplary damages against said Defendants.

WHEREFORE, the Plaintiff prays that he have and recover judgment against the Defendants on Count I for compensatory damages in an amount in excess of $75,000.00 to be shown at trial; punitive damages against the individual defendants in an amount in excess of $75,000.00 to be shown at trial; plus all costs of this action, a reasonable attorney's fee, interest allowable by law and all further equitable relief which the Court deems appropriate.

***COUNT II***
***OKLAHOMA PUBLIC POLICY WRONGFUL DISCHARGE (BURK TORT)***

31. The Plaintiff, Rhynerson, adopts and incorporates by reference the allegations set forth in paragraphs 1-30 of this Complaint as if fully set forth herein.

32. With respect to Plaintiff's claims arising under the tort law of the State of Oklahoma, Washington County is a political subdivision under the Governmental Tort Claims Act pursuant to Title 52, Oklahoma Statutes, Section 152(8)(c) and is subject to the provisions of the Governmental Tort Claims Act ("GTCA").

33. In compliance with the GTCA, the Plaintiff filed an appropriate Notice of Tort Claim with the County Clerk of Washington County, Oklahoma on May 28, 2008 which was within one year of the wrongful conduct as required by Title 51, Oklahoma Statutes, Section 156(B).

34. Due to the failure of the County to approve Plaintiff's claim within 90 days, his tort claim was deemed denied on or about August 26, 2008.

35. The Plaintiff has commenced this action against the County by naming the Board as a

Defendant in this action, as required by Title 19, Oklahoma Statutes, Section 4, within 180 days after the denial of his Tort Claim pursuant to Title 51, Oklahoma Statutes, Section 157(B).

36. The Defendants Dunlap, Deckard and Herndon were acting within the course and scope of their positions on the Board at the time of the unlawful conduct complained of herein and Washington County is therefore liable for the wrongful conduct of the Board under the GTCA.

37. Alternatively, to the extent that Defendants Dunlap, Deckard and/or Herndon  may be shown to have engaged in willful, wanton or bad faith conduct with respect to the conduct complained herein, their conduct was outside the scope of their duties as County Commissioners and they are therefore individual liable to the Plaintiff.  To the extent that Defendants Dunlap, Deckard and/or Herndon were acting outside the scope of their duties as County Commissioners, an award of punitive and exemplary punitive damages against them is also appropriate.

38.  By expressing his legitimate concerns regarding the operation of Washington County government, as set forth above and incorporated herein by reference, Rhynerson was performing an important public obligation, exercising a legal right or interest, exposing wrongdoing which was a matter of public concern and/or performing an act that public policy would encourage.

39. The wrongful discharge of Rhynerson was contrary to the clear mandates of public policy of the State of Oklahoma as expressed, *inter alia,* by the following, and/or a combination thereof: **(I)** Article 2, Section 22, of the Oklahoma Constitution's guaranteed right to free speech as further expressed under Oklahoma case law which has been specifically held "... is a public policy concern by virtue of the Constitution of the State of Oklahoma" (*See First American Bank & Trust v. Sawyer,* 865 P.2d 347, 352 (Okla. App. 1993) and the right to the exercise of protected

11

free speech on public issues to facilitate the functioning of democratic government under the Oklahoma Constitution which has been specifically held to give each citizen an equal right to self-expression and to participation in self government (*See generally, Gaylord Entertainment Co. v. Thompson,* 958 P.2d 128 (Okla. 1998); **(II)** The protection from discharge for government whistle blowing activities as is provided to state employees under the Oklahoma Personnel Act, Title 74, Oklahoma Statutes, Sections 8401.1 - 840 7.1 and particularly under 74 O.S. 840 -2.5 (A) and (B) whose purpose is specifically to encourage and protect the reporting of wrongful governmental activities and to deter retaliation for reporting those activities, and which prohibits disciplinary actions against employees from discharge for the activities specifically set forth in Section 840 - 2.5(B); **(III)** Public policy as expressed in Oklahoma case law, including the recent pronouncements by the Oklahoma Supreme Court in *Darrow v. Integris Health, Inc.,* 176 P.3d 1204, 2008 OK 1, which specifically states , *inter alia,* that: "Oklahoma law protects both **internal** and **external** reporting of whistleblowers who rely on an employer's public-policy violation to support an actionable employment termination." (emphasis in original); "Employees who report and complain of an employer's unlawful or unsafe practices and whose actions seek to further the public good by unmasking these breaches which should be protected from an employer's retaliation."; and "... the state's 'Whistleblower Act,'.... manifests a public policy which is in harmony with today's view that private employees should enjoy a not dissimilar quantum of protection under *Burk* ." (citations omitted); **(IV)** The Oklahoma Open Meeting Act, 25 O.S. Sections 301-314, which requires advanced notice of public meetings and which precluded Rhynerson's termination by Defendant Deckard on November 20, 2007 prior to and in the absence of prior formal Board action approving same; **(V)** The provisions of Title 19,

12

Oklahoma Statutes, Section 348, which require that all matters pertaining to the interests of the county shall be heard by the board of county commissioners in public session only (except executive sessions in the manner and situations specifically provided by statute) and the provisions of Title 19, Oklahoma Statutes, Section 448 which provides for statutory penalties for county commissioners who fail to perform any duty required by law.

40. As a direct result of his unlawful discharge, the Plaintiff has and will suffer damages; has been and will be deprived of income in the form of lost wages, lost job benefits and lost retirement benefits; and the Plaintiff has and will suffer from mental pain, anguish, emotional distress, and loss of enjoyment of life.

WHEREFORE, the Plaintiff prays that he have and recover judgment against the Defendants on Count II for compensatory damages in an amount in excess of $75,000.00 to be shown at trial; punitive damages against the individual Defendants in an amount in excess of $75,000.00 to be shown at trial in the event that it is shown that they were acting outside the scope of their duties as County Commissioners; plus a reasonable attorney's fee, all costs of this action, interest allowable by law and all further equitable relief which the Court deems to be appropriate.

### COUNT III
### CLAIM UNDER OKLAHOMA LAW FOR PROMISSORY ESTOPPEL

41. The Plaintiff, Rhynerson, adopts and incorporates by reference the allegations set forth in paragraphs 1-40 of this Complaint as if fully set forth herein.

42. Pursuant to Rhyernson's employment by Washington County, it was promised to him both orally and in the Employee Personnel Policy Handbook for Washington County which was

13

in effect at all times material hereto, that Washington County had an "Open Door Policy" with respect to expressing complaints to elected officials including the Board. The purpose of the "Open Door Policy" was, *intera alia,* to promote free and open communication in County government.

43.  It was forseeable that employees, including the Plaintiff,  would rely on the promise of an "Open Door Policy" in expressing concerns.

44. The Plaintiff, Rhynerson, reasonably relied to his detriment on the promise of an "Open Door Policy" in expressing certain of the concerns referred to above.

45. The Plaintiff has suffered and will suffer damages, as referred to above, as a result of his reasonable reliance on the promise of an "Open Door Policy", and hardship or unfairness can be avoided only by the promise's enforcement.

WHEREFORE, the Plaintiff prays that he have and recover judgment  against the Defendants on Count III for compensatory damages in an amount in excess of $75,000.00 to be shown at trial; plus all costs of this action, reasonable attorney's fee, interest allowable by law and all further equitable relief which the Court deems appropriate.

### *COUNT IV*
### *CLAIM UNDER OKLAHOMA LAW FOR TORTIOUS INTERFERENCE*

46. The Plaintiff, Rhynerson, adopts and incorporates by reference the allegations set forth in paragraphs 1-45 of this Complaint as if fully set forth herein.

47. Prior to his termination, the Plaintiff was employed by and had a long term employment relationship with Washington County.

48. The individual Defendants, Dunlap, Deckard and Herndon, wrongfully and

14

maliciously interfered with Plaintiff's employment relationship with Washington County and as a result thereof Rhynerson's employment relationship was terminated.

49. The interference complained of above was neither justified, privileged, nor excusable, and such actions were undertaken in bad faith and were contrary to the interests of Washington County.

50. The individual Defendants' actions were undertaken intentionally and maliciously, or with reckless disregard for the rights of Rhynerson, so as to justify an award of punitive and exemplary damages against them.

WHEREFORE, the Plaintiff prays that he have and recover judgment against the individual Defendants only on Count IV for compensatory damages in an amount in excess of $75,000.00 to be shown at trial; punitive damages in an amount in excess of $75,000.00 to be shown at trial; plus all costs of this action, a reasonable attorney's fee, interest allowable by law and all further equitable relief which the Court deems to be appropriate.

Respectfully Submitted,

Kevin R. Kelley, OBA #11889
1861 E. 15th Street
Tulsa, OK   74104
(918) 592-4000 - Telephone
(918) 744-6300- Facsimile
Attorney for Plaintiff